

MJC/HMG2022R00323

USDC- BALTIMORE
'23 SEP 14 PM 3:55

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. _____  LKG 23cr323 |
| | : | |
| **v.** | : | **(Conspiracy to Commit Wire Fraud** |
| | : | **and Mail Fraud, 18 U.S.C. § 1349;** |
| **MICHAEL GEORGE VERZALENO, JR,** | : | **Wire Fraud, 18 U.S.C. § 1343; Mail** |
| **MICHAEL G. VERZALENO, SR, and** | : | **Fraud, 18 U.S.C § 1341; False** |
| **SUSAN P. CARRANO,** | : | **Statement, 18 U.S.C. § 1001; and** |
| | : | **Forfeiture, 18 U.S.C. § 981(a)(1)(C)(A),** |
| **Defendants.** | : | **21 U.S.C. § 853(p), and 28 U.S.C.** |
| | : | **§ 2461(c))** |
| | : | |

...oOo...

## INDICTMENT

### COUNT ONE

**(Conspiracy to Defraud)**

The Grand Jury for the District of Maryland charges that:

### Introduction

At times relevant to this Indictment:

1.   Defendants **MICHAEL GEORGE VERZALENO, JR. ("VERZALENO, JR."),** **MICHAEL G. VERZALENO, SR. ("VERZALENO, SR."),** and **SUSAN P. CARRANO ("CARRANO")** were residents of New Jersey.

2.   **VERZALENO, JR.,** was an owner and vice-president of Kearney Steel Container Corporation ("KSC"), located at 401 South Street, Newark, New Jersey.   KSC was in the business of selling commercial drum containers, including new and reconditioned steel, plastic, and fiber drums of varying sizes, which manufacturers used to store and transport products.

3.      **VERZALENO, SR.**, was an owner and president of KSC.

4.      **CARRANO** was the controller of KSC.

5.      Company A was a global business headquartered in New York that formulated and produced oils and extracts used in the food industry.   Company B was affiliated with Company A and produced flavoring ingredients and seasonings for the food industry (hereinafter, Company A and Company B are collectively referred to as the "Companies").   The Companies had manufacturing facilities in Belcamp, Maryland, and Abingdon, Maryland.   To ship their products, the Companies used large steel, plastic, and fiber drums as containers, which they purchased from drum vendors located in various states.

6.      EUGENE DINOTO was a resident of Maryland employed as the facilities manager for the Companies until approximately January 2020.   As the facilities manager, DINOTO was responsible for fulfilling drum purchase orders on behalf of the Companies at the Belcamp and Abingdon facilities in Maryland, a job that required him to arrange and negotiate the prepurchase, transportation, and storage of the requisite number of drums needed to ship the Companies' products.

7.      As part of the process of purchasing drums on behalf of the Companies, DINOTO reviewed and authorized the payment of drum invoices submitted by drum suppliers doing business with the Companies.   Once approved, the drum invoices were sent from Maryland to the accounting department at the Companies' headquarters in New York for payment.

8.      JOHN CRISCUOLO was a resident of New Jersey who worked as a salesman for companies that sold and distributed commercial drum containers.

9.      FedEx Corporation ("FedEx") was a commercial interstate carrier and delivery service company headquartered in Memphis, Tennessee.

2

**The Scheme to Defraud**

10.     From in or about September 2013 until in or about January 2020, in the District of Maryland and elsewhere, the defendants,

**MICHAEL GEORGE VERZALENO, JR,**
**MICHAEL G. VERZALENO, SR, and**
**SUSAN P. CARRANO,**

and DINOTO and CRISCUOLO, did knowingly devise and intend to devise a scheme and artifice to defraud the Companies and to obtain money and property from the Companies by means of materially false and fraudulent pretenses, representations, and promises, that is, the defendants knowingly submitted and caused to be submitted false purchase invoices for drums that fraudulently overstated the amount of money the Companies owed Kearney Steel Container Corporation, and in return for DINOTO's approval and submission of those false invoices for payment, the defendants gave DINOTO and CRISCUOLO a share of the inflated invoice amounts in the form of cash kickbacks (hereinafter "the scheme to defraud").

**The Conspiracy to Execute the Scheme to Defraud**

11.     From in or about September 2013 until in or about January 2020, in the District of Maryland and elsewhere, the defendants,

**MICHAEL GEORGE VERZALENO, JR,**
**MICHAEL G. VERZALENO, SR, and**
**SUSAN P. CARRANO,**

did knowingly and willfully conspire, combine, confederate, and agree with each other and with DINOTO, CRISCUOLO and other persons known and unknown to the Grand Jury to commit mail fraud and wire fraud, that is, to knowingly execute and attempt to execute the scheme to defraud through the use of the U.S. Postal Service, interstate common carrier, and interstate wires, in

3

violation of Title 18, United States Code, Sections 1341 and 1343, respectively (hereinafter, the "conspiracy to defraud").

### Object of the Conspiracy to Defraud

12.     The purpose of the conspiracy to defraud was for the defendants, DINOTO, CRISCUOLO, and other persons to obtain the Companies' money and property by materially false and fraudulent pretenses, representations, and promises.

### Manner and Means of the Conspiracy to Defraud

13.     It was part of the conspiracy to defraud that the defendants made a secret arrangement with DINOTO and CRISCUOLO to regularly send false KSC invoices to bill the Companies for thousands of drums that the defendants never intended to deliver.

14.     It was further part of the conspiracy to defraud that the defendants falsified KSC delivery receipts as a pretense for billing the Companies for drum deliveries that never took place.

15.     It was further part of the conspiracy to defraud that DINOTO intentionally overlooked the false charges listed on the KSC invoices, certified their accuracy, and authorized their payment by stamping and signing them, and then submitted them via interstate email and wire communications to the Companies' accounting department in New York for payment.

16.      It was further part of the conspiracy to defraud that once DINOTO approved payment of the false invoices, KSC and the defendants received checks for the full fraudulently billed amount from the Companies, which had sent the checks from their office in New York to KSC's office in New Jersey via the U.S. Postal Service or interstate common carrier.

17.     It was further part of the conspiracy to defraud that, in return for approving payment of the false KSC invoices, the defendants paid DINOTO and CRISCUOLO a portion of the falsely billed amount in the form of a cash kickback.

18.     It was further part of the conspiracy to defraud that the defendants sent DINOTO's cash kickback via FedEx to his residence in Harford County, Maryland, and gave CRISCUOLO his cash kickback in person.

19.     It was further part of the conspiracy to defraud that the defendants and DINOTO, to avoid scrutiny and conceal the scheme, intermittently submitted true KSC invoices to the Companies for actual drum deliveries.

20.     It was further part of the conspiracy to defraud that the defendants deposited the Companies' checks for fictitious deliveries into KSC's business account #-------4508 where the proceeds were maintained and subsequently used to pay business expenses or withdrawn or transferred to other accounts to pay personal expenses.


18 U.S.C. § 1349

## COUNTS TWO THROUGH FIFTEEN

### (Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 10 and paragraphs 12 through 20 of Count One are realleged and incorporated by reference as though fully set forth in these Counts.

2.     On or about the dates listed below, in the District of Maryland, the defendants,

**MICHAEL GEORGE VERZALENO, JR,**
**MICHAEL G. VERZALENO, SR, and**
**SUSAN P. CARRANO,**

for the purpose of executing and attempting to execute the scheme to defraud, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communications, certain writings, signs, signals, and sounds, as set forth below:

| COUNT | DATE | WIRE TRANSMISSION |
|-------|------|-------------------|
| 2 | 10-17-18 | Email sent from KSC email account to DINOTO's C&A email account with attached invoice #100428 dated 10-11-18 in the amount of $30,700.25 |
| 3 | 10-30-18 | Email sent from DINOTO's C&A email account to C&A's accounting department with attached invoice #100428 |
| 4 | 11-6-18 | Email sent from KSC email account to DINOTO's C&A email account with attached invoice #100860 dated 11-1-18 in the amount of $30,894.04 |
| 5 | 11-14-18 | Email sent from DINOTO's C&A email account to C&A's accounting department with attached invoice #100860 |
| 6 | 12-3-18 | Email sent from KSC email account to DINOTO's C&A email account with attached invoice #101347 dated 11-23-18 in the amount of $30,378.46 |
| 7 | 12-10-18 | Email sent from DINOTO's C&A email account to C&A's accounting department with attached invoice #101347 |
| 8 | 4-2-19 | Email sent from KSC email account to DINOTO's C&A email account with attached invoice #103867 dated 3-18-19 in the amount of $29,669.85 |
| 9 | 4-10-19 | Email sent from DINOTO's C&A email account to C&A's accounting department with attached invoice #103867 |

| 10 | 6-14-19 | Email sent from KSC email account to DINOTO's C&A email account with attached invoice #105356 dated 5-28-19 in the amount of $30,815.18 |
| 11 | 6-24-19 | Email sent from DINOTO's C&A email account to C&A's accounting department with attached invoice #105356 |
| 12 | 8-19-19 | Email sent from KSC email account to DINOTO's C&A email account with attached invoice #106642 dated 8-1-19 in the amount of $30,895.46 |
| 13 | 9-3-19 | Email sent from DINOTO's C&A email account to C&A's accounting department with attached invoice #106642 |
| 14 | 10-14-19 | Email sent from KSC email account to DINOTO's C&A email account with attached invoice #107883 dated 10-8-19 in the amount of $29,787.12 |
| 15 | 11-15-19 | Email sent from DINOTO's C&A email account to C&A's accounting department with attached invoice #107883 |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNTS SIXTEEN THROUGH EIGHTEEN

### (Mail Fraud)

The Grand Jury for the District of Maryland further charges that:

    1.       Paragraphs 1 through 10, and paragraphs 12 through 20, of Count One are realleged and incorporated by reference as though fully set forth in these Counts.

    2.       On or about the dates listed below, in the District of Maryland, the defendants,

**MICHAEL GEORGE VERZALENO, JR,**
**MICHAEL G. VERZALENO, SR, and**
**SUSAN P. CARRANO,**

for the purpose of executing and attempting to execute the scheme to defraud, did knowingly cause mail matter to be delivered by FedEx, a commercial interstate carrier, according to the address thereon, as set forth below:

| COUNT | DATE | FROM | TO | CONTENTS |
|---|---|---|---|---|
| 16 | 3-18-19 | 401 South Street, Newark, NJ 07105 FedEx | 2810 Forge Hill Rd Bel Air, MD 21014 | U.S. currency |
| 17 | 5-28-19 | 401 South Street, Newark, NJ 07105 FedEx | 2810 Forge Hill Rd Bel Air, MD 21014 | U.S. currency |
| 18 | 10-10-19 | 401 South Street, Newark, NJ 07105 FedEx | 2810 Forge Hill Rd Bel Air, MD 21014 | U.S. currency |

18 U.S.C. § 1341
18 U.S.C. § 2

## COUNT NINETEEN

### (False Statement)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 10 and paragraphs 12 through 20 of Count One are realleged and incorporated by reference as though fully set forth in this Count.

2.      On or about September 29, 2022, in the District of Maryland, the defendant,

**SUSAN P. CARRANO,**

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States by making the following statements to investigative agents of the Federal Bureau of Investigation and the Internal Revenue Service during an interview at the Office of the United States Attorney in Baltimore, Maryland:

a)      the defendant stated that she did not know the reason why KSC had the address of DINOTO's personal residence in Maryland, when, in truth and fact, as the defendant then and there knew, she and other KSC employees regularly sent cash payments via FedEx to the address of DINOTO's personal residence from August 2015 to December 2019;

b)      the defendant stated that she and other KSC employees only used FedEx to send gifts, like baseball tickets, to customers, when, in truth and fact, as the defendant then and there knew, she and other KSC employees used FedEx to regularly send cash payments to DINOTO's residence in Maryland from August 2015 to December 2019; and

c)      regarding the words "Gene paid" handwritten by the defendant on a QuickBooks summary of transactions, the defendant stated that she did not know what was paid to "Gene," when, in truth and fact, as the defendant then and there knew, she and other KSC employees

9

regularly sent cash payments via FedEx to DINOTO's personal residence from August 2015 to December 2019.

18 U.S.C. § 1001(a)(2)

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.     Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendants' conviction on the offenses charged in Count One of this Information.

### Wire Fraud and Mail Fraud Forfeiture

2.     Upon conviction of any of the offenses set forth in Counts One through Eighteen of this Indictment, the defendants,

**MICHAEL GEORGE VERZALENO, JR,**
**MICHAEL G. VERZALENO, SR, and**
**SUSAN P. CARRANO,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud.

### Property Subject to Forfeiture

3.     The property to be forfeited includes, but is not limited to, a money judgment in the amount of at least $9,887,793.

### Substitute Assets

4.     If any of the property described above, as a result of any act or omission of the defendant:

   a.     cannot be located upon the exercise of due diligence;

   b.     has been transferred or sold to, or deposited with, a third party;

   c.     has been placed beyond the jurisdiction of the Court;

11

d.   has been substantially diminished in value; or

e.   has been commingled with other property that cannot be divided without

difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C.

§ 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Date:   9/14/23

Erek L. Barron
United States Attorney for the
District of Maryland

**SIGNATURE REDACTED**

Foreperson

9/14/23

Date

12