UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| v. | * | |
| | * | Criminal No. 23-cr-323-DKC |
| | * | |
| MICHAEL VERZALENO, JR., ET AL., | * | |
| | * | |
| Defendants. | * | |

**MOTION TO DISMISS THE INDICTMENT
BY DEFENDANT SUSAN P. CARRANO**

ABELL ESKEW LANDAU LLP

David M. Eskew
Jarrod L. Schaeffer
256 Fifth Avenue, 5th Floor
New York, NY 10001

(*pro hac vice*)

VENABLE LLP

Evan T. Shea
750 E. Pratt Street, Suite 900
Baltimore, MD 21202

*Counsel for Defendant Susan P. Carrano*

# **Table of Contents**

PRELIMINARY STATEMENT .................................................................................................... 1

I.  RELEVANT FACTS ...................................................................................................... 2

II. ARGUMENT .................................................................................................................. 5

    a.  Applicable Law ..................................................................................................... 6

    b.  The Indictment fails to adequately allege that Ms. Carrano knowingly conspired
        to commit fraud ....................................................................................................... 8

    c.  The Indictment fails to adequately allege that Ms. Carrano committed substantive
        violations of the wire and mail fraud statutes ....................................................... 16

    d.  The Indictment fails to adequately allege interstate transmission and venue
        sufficient to establish substantive violations by Ms. Carrano of the wire fraud
        statute .................................................................................................................... 19

    e.  The Indictment fails to adequately allege that Ms. Carrano made false and
        material statements ................................................................................................. 24

III. CONCLUSION ............................................................................................................. 29

For the reasons that follow, defendant Susan P. Carrano respectfully requests that this Court dismiss all charges alleged against her in the above-captioned indictment (the "Indictment") pursuant to Rule 12 of the Federal Rules of Criminal Procedure.

## PRELIMINARY STATEMENT

The Government has charged Ms. Carrano, along with her co-defendants, Michael Verzaleno, Jr., and Michael Verzaleno, Sr. (collectively, the "Defendants"), with eighteen counts all purportedly stemming from a fraudulent scheme involving kickbacks. The Government has further charged Ms. Carrano with lying to law enforcement based on statements she made during voluntary proffers that did not fit with the Government's preferred narrative. Ms. Carrano denies all of these charges and expects that the Government will be unable to prove them at trial. But this case should not get that far, because the Indictment is legally deficient.

An indictment must apprise the accused of the charges against her so that she can prepare her defense, setting forth with sufficient particularity all essential facts constituting any offenses. One of the most obvious facts necessary for any defendant to prepare a defense is what actions they are accused of taking, yet this Indictment fails to provide even that most basic information. Instead, throughout the Indictment refers vaguely to "defendants," declining ever to specify who did what despite significant differences in Defendants' respective roles, authority, responsibilities, knowledge, and access to people and information. There is no "definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Left with only boilerplate statutory and general allegations, Ms. Carrano is forced to guess what the Government will claim during trial she actually did—even with respect to substantive fraud counts. That need to speculate about the conduct alleged prevents Ms. Carrano from preparing to defend against the

Government's charges, which violates both the U.S. Constitution and Rule 7 of the Federal Rules of Criminal Procedure.

Because the Indictment does not adequately inform Ms. Carrano of the nature of the Government's accusations against her with reasonable certainty, the Indictment must be dismissed in its entirety. Because the Indictment further fails to properly allege venue for, and a key element of, the offenses charged in Counts Two through Fifteen, dismissal of those counts is warranted on that ground as well. And because the Indictment fails even to allege that Ms. Carrano's purportedly false statements were actually false, Count Nineteen is deficient on that additional basis. The Court should grant this motion and dismiss the charges against Ms. Carrano.

## I. RELEVANT FACTS

The Indictment in this case was returned on September 14, 2023. (*See* Dkt. 1.) According to that Indictment,[1] Ms. Carrano is a resident of New Jersey who was employed as the "controller" of Kearny Steel Container Corporation ("KSC"), which is located in Newark, New Jersey. (*Id.* at 1–2 ¶¶ 1–4.) The Indictment further alleges that, from in or about September 2013 through in or about January 2020, Defendants conspired among themselves and with two uncharged individuals, Eugene DiNoto and John Criscuolo, to defraud two companies through a scheme wherein they "knowingly submitted and caused to be submitted false purchase invoices for drums that fraudulently overstated the amount of money the [c]ompanies owed Kearney [*sic*] Steel Container

---

[1] On a motion to dismiss, "[a] district court is limited to considering the factual allegations in the indictment and must accept them as true . . . ." *United States v. Brewbaker*, 87 F.4th 563, 579 (4th Cir. 2023). For the avoidance of any doubt, Ms. Carrano does not agree that the Indictment's allegations are true or accurate and expects that a jury would reject the Government's claims at trial. Purely for purposes of this motion, however, Ms. Carrano recounts the allegations in the Indictment that the Court must consider.

Corporation . . . ."[2]  (*Id.* at 3 ¶ 10.)  In return for DiNoto's "approval and submission of those false invoices for payment" to the companies, Defendants allegedly paid DiNoto and Criscuolo (whose purported role or involvement is never actually described) "a share of the inflated invoice amounts in the form of cash kickbacks."  (*Id.*)  This is the full scope of the scheme or artifice to defraud that the Government alleges.  (*See id.* (defining this conduct as "the scheme to defraud").)  The balance of the Indictment outlines charges against Defendants based on that purported scheme.

First, it charges Defendants with conspiring to engage in the scheme to defraud (Count One).  (*See id.* at 4–5 ¶¶ 11–20.)  Specifically, as to the supposed conspiracy, the Indictment alleges that Defendants "knowingly and willfully conspire[d], combine[d], confederate[d], and agree[d] with each other and with D[iNoto], C[riscuolo] and other persons known and unknown . . . to knowingly execute and attempt to execute the scheme to defraud" through the use of the mail and interstate wires.  (*Id.* at 4 ¶ 11.)  The Government claims there were several steps in this conspiracy, alleging that unspecified "defendants" at various times took the following actions:  (*i*) "made a secret arrangement" with DiNoto and Criscuolo "to regularly send false KSC invoices to bill the [c]ompanies for thousands of drums that the defendants never intended to deliver"; (*ii*) "falsified KSC delivery receipts as a pretense for billing the [c]ompanies for drum deliveries that never took place"; (*iii*) had DiNoto "intentionally overlook[] the false charges listed on the KSC invoices, certif[y] their accuracy, and authorize[] their payment by stamping and signing them, and then submit[] them via interstate email and wire communications to the [c]ompanies' accounting department in New York for payment"; (*iv*) after DiNoto had approved payment of those invoices, "received checks for the full fraudulently billed amount from the [c]ompanies"; (*v*) "in return for

---

[2]      While the Indictment mentions two companies, Company A and Company B, there are no allegations specific to Company B and its relevance to the charged offenses, if any, is unclear.

approving payment of the false KSC invoices," gave DiNoto and Criscuolo "a portion of the falsely billed amount in the form of a cash kickback"; (*vi*) sent those kickbacks to DiNoto and Criscuolo via FedEx or paid them in person; (*vii*) "intermittently submitted true KSC invoices to the [c]ompanies for actual drum deliveries" supposedly "to avoid scrutiny and conceal the scheme"; and (*viii*) deposited checks from the companies paying "for fictitious deliveries into KSC's business account," from which funds were later used "to pay business expenses or withdrawn or transferred to other accounts to pay personal expenses." (*Id.* at 4–5 ¶¶ 13–20.)

Second, the Indictment charges Defendants with fourteen substantive counts of wire fraud based on the purported scheme to defraud (Counts Two through Fifteen). (*See id.* at 6–7 ¶¶ 1–2.) Again, the Government does not specify which "defendants" supposedly committed any of the substantive acts alleged. (*See id.*) Rather, the Indictment includes only two sparse paragraphs for all fourteen counts and a single chart containing high-level descriptions of fourteen emails allegedly exchanged between certain email accounts. (*Id.* at 7 ¶ 2.) Nowhere in connection with Counts Two through Fifteen does the Indictment identify any particular defendant alleged to have sent or received—or caused to be sent or received—any of the hazily described emails.

Third, the Indictment charges Defendants with three substantive counts of mail fraud based on the purported scheme to defraud (Counts Sixteen through Eighteen). (*See id.* at 8 ¶¶ 1–2.) Here, too, the Indictment includes only two bare bones paragraphs and a chart containing high-level descriptions of three packages allegedly sent via FedEx. (*Id.*) And again, nowhere in connection with Counts Sixteen through Eighteen does the Government identify any particular defendant alleged to have sent or received—or caused to be sent or received—any of those packages.

Fourth, the Indictment charges Ms. Carrano with making allegedly false statements of material fact to federal law enforcement (Count Nineteen). (*See id.* at 9–10 ¶¶ 1–2.) In particular, the Government claims that on September 29, 2022, during a voluntary interview at the United States Attorney's Office in Baltimore, Ms. Carrano "willfully and knowingly ma[d]e . . . materially false, fictitious, and fraudulent statement[s] and representation[s]" to agents with the Federal Bureau of Investigation and the Internal Revenue Service. (*Id.* at 9 ¶ 2.) Specifically, the Indictment alleges that Ms. Carrano stated: (*i*) "that she did not know the reason why KSC had the address of D[iNoto]'s personal residence in Maryland," when supposedly "in truth and fact, as the defendant then and there knew, she and other KSC employees regularly sent cash payments via FedEx to the address of D[iNoto]'s personal residence from August 2015 to December 2019"; (*ii*) "that she and other KSC employees only used FedEx to send gifts, like baseball tickets, to customers," when supposedly "in truth and fact, as the defendant then and there knew, she and other KSC employees used FedEx to regularly send cash payments to D[iNoto]'s residence in Maryland from August 2015 to December 2019"; and (*iii*) that, "regarding the words 'Gene paid' handwritten by [her] on a QuickBooks summary of transaction," Ms. Carrano "did not know what was paid to 'Gene,'" when supposedly "in truth and fact, as the defendant then and there knew, she and other KSC employees regularly sent cash payments via FedEx to D[iNoto]'s personal residence from August 2015 to December 2019." (*Id.* at 9–10 ¶ 2.)

## II. ARGUMENT

In short, Ms. Carrano is charged with three kinds of crimes in nineteen counts: (*i*) conspiracy to commit mail and wire fraud; (*ii*) substantive wire and mail fraud; and (*iii*) making false statements. For the reasons that follow, none of those offenses is sufficiently alleged in the Indictment and all must be dismissed.

### a. *Applicable Law*

"One of the principal purposes of an indictment is to apprise the accused of the charge or charges against him so he can prepare his defense." *United States v. Fogel*, 901 F.2d 23, 25 (4th Cir. 1990). The Federal Rules of Criminal Procedure require every indictment to set forth "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "To pass constitutional muster, an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense." *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998). "An indictment not framed to apprise the defendant 'with reasonable certainty, of the nature of the accusation against h[er] is defective, although it may follow the language of the statute." *Russell v. United States*, 369 U.S. 749, 765 (1962) (quoting *United States v. Simmons*, 96 U.S. 360, 362 (1877)).

A defendant may move to dismiss an indictment when it contains a "defect," including a "lack of specificity" and a "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii), (v). Thus, this Court "may dismiss an indictment . . . 'where there is an infirmity of law in the prosecution.'" *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) (quoting *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010)); *accord Brewbaker*, 87 F.4th at 579 (explaining that "while an indictment may not be dismissed simply because the district court doesn't think the government can prove what it has alleged, an indictment may be dismissed if the district court concludes that the allegations in the indictment—even if proven—would not satisfy the elements of the charged offense"). At this stage, "[a] district court is limited to considering the factual allegations in the indictment and must accept them as true in ruling on a motion to dismiss," *Brewbaker*, 87 F.4th at 579, because the Court "lack[s] authority to review the sufficiency of the evidence supporting the indictment." *United States v. Wills*, 346 F.3d 476, 488 (4th Cir. 2003).

Nevertheless, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Brewbaker*, 87 F.4th at 579 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

While an indictment need not include every fact that the Government may assert at trial, it "must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." *United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014) (quoting *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009)). "[S]imply parroting the language of the statute in the indictment is insufficient." *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002). Rather, "the indictment must also contain a 'statement of the *essential facts* constituting the offense charged.'" *Id.* (quoting Fed. R. Crim. P. 7(c)(1) (emphasis in original)); *accord Hale v. United States*, 89 F.2d 578, 579 (4th Cir. 1937) ("It is elementary that every ingredient of crime must be charged in the bill, a general reference to the provisions of the statute being insufficient.").

The notice requirement "derives from the defendant's Sixth Amendment right to be informed of the nature and cause of the accusation" and "is only half of the question." *United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988). There is also a separate requirement that "derives from the Fifth Amendment, which requires that the grand jury have considered and found all elements to be present." *Id.* "[F]actual particularity must 'ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury.'" *United States v. Elshinawy*, 228 F. Supp. 3d 520, 537 (D. Md. 2016) (quoting *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999)). Courts therefore apply "heightened scrutiny to ensure that every essential element of an offense has been charged." *Perry*, 757 F.3d at 171.

### b. The Indictment fails to adequately allege that Ms. Carrano knowingly conspired to commit fraud

Count One charges Ms. Carrano with conspiring to commit wire and mail fraud, in violation of 18 U.S.C. § 1349. Where the Government alleges a conspiracy, it must allege all elements of that offense, including "an agreement among the defendants to do something which the law prohibits; knowing and willing participation by the defendants in the agreement; and an overt act by the defendants in furtherance of the purpose of the agreement." *United States v. Hedgepeth*, 418 F.3d 411, 420 (4th Cir. 2005) (quoting *United States v. Meredith*, 824 F.2d 1418, 1428 (4th Cir. 1987)). To be guilty of this crime, "[t]he partners in the criminal plan must agree to pursue the same criminal objective," *Salinas v. United States*, 522 U.S. 52, 63–64 (1997), and there must be "a joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of the underlying substantive criminal offense.'" *Ocasio v. United States*, 578 U.S. 282, 287 (2016) (quoting *Salinas*, 522 U.S. at 65). As such, "the object of the conspiracy [must] be set forth sufficiently to identify the offense which the defendant is charged with conspiring to commit." *United States v. Matzkin*, 14 F.3d 1014, 1019 (4th Cir. 1994).

Although allegations pertaining to a conspiracy are assessed in the context of "practical, as opposed to purely technical considerations," the central question always remains whether an indictment "tells the defendant all that is needed to show for h[er] defense, and . . . provides enough information that the defendant will not be placed in double jeopardy." *United States v. Elbaz*, 332 F. Supp. 3d 960, 969 (D. Md. 2018), *aff'd*, 39 F.4th 214 (4th Cir. 2022), *opinion vacated and*

*superseded on reh'g*, 52 F.4th 593 (4th Cir. 2022), and *aff'd*, 52 F.4th 593 (4th Cir. 2022). The Indictment in this case falls short of that mark.[3]

Far from alleging specific facts that could support an inference that Ms. Carrano knowingly and willfully joined a conspiracy, this Indictment fails to allege both her state of mind and specific actions that she supposedly took or directed. *Cf. Ingram v. United States*, 360 U.S. 672, 678 (1959) ("Conspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself." (internal citation omitted)).[4] Instead, the Indictment alleges generally that "defendants" engaged in certain conduct, never specifying *which* of the defendants supposedly did so. That ambiguity is meaningful in a case involving three defendants, since "the defendants" could potentially refer to all defendants or only some (in multiple permutations of different individuals).[5]

Nor can it be assumed that *all* defendants took *all* actions alleged in the Indictment, at a minimum because each defendant had a different role at KSC (*see, e.g.*, Dkt. 1 at 1–2 ¶¶ 2–4), and the conduct alleged in the Indictment cuts across a wide spectrum—from internal managerial

---

[3]    For reasons similar to those articulated here, Defendants previously moved for a bill of particulars. (*See* Dkt. 38.) That request remains pending and, for the reasons stated therein, should be granted. Regardless, however, "it is a settled rule that a bill of particulars cannot save an invalid indictment" as "an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form." *Russell*, 369 U.S. at 770.

[4]    As detailed more fully in the following section, these deficiencies also mean that the Indictment fails to allege that Ms. Carrano acted at any point "with the specific intent to defraud . . . ." *United States v. Watlington*, 287 F. App'x 257, 261 (4th Cir. 2008). Since the Indictment must allege "a joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of the underlying substantive criminal offense,'" *Ocasio*, 578 U.S. at 287 (quoting *Salinas*, 522 U.S. at 65), this too is a fatal flaw.

[5]    Notably, where the Government elsewhere sought to refer collectively to multiple individuals or entities, it did so using a defined term. (*See, e.g.*, Dkt. 1 at 2 ¶ 5 ("hereinafter, Company A and Company B are collectively referred to as the 'Companies'").) There is no such definition specifying whether "the defendants" refers to Michael Verzaleno, Jr., Michael Verzaleno, Sr., and Ms. Carrano collectively, or some combination thereof.

9

actions like making billing decisions to external communications with non-KSC personnel to clerical tasks like preparing receipts or sending mail. (*See id.* at 4–5, ¶¶ 13–14, 18.) There is no basis to assume—and, more importantly for purposes of this motion, no allegation—that each defendant was responsible for such a broad range of tasks or even would have had knowledge of them. To the contrary, where it is possible to infer from the Indictment particular actions that a defendant *might* have taken, those inferences cut against a blanket assumption that "the defendants" consistently refers to all defendants. For example, Count One alleges that "[i]t was further part of the conspiracy to defraud that *the defendants* sent D[iNoto]'s cash kickback via FedEx to his residence in Harford County, Maryland." (Dkt. 1 at 5 ¶ 18 (emphasis added).) But Count Nineteen, which is not incorporated by reference into Counts One through Eighteen, alleges instead that Ms. Carrano or unspecified "other KSC employees" sent those FedEx mailings. (*Id.* at 9 ¶ 2(a).) It is doubtful that Ms. Carrano's co-defendants—identified in the Indictment as owners and the president and vice president of KSC, respectively (*see id.* at 1–2 ¶¶ 2–3)—would be referenced as "other KSC employees," and clearly not all KSC employees are included in "the defendants" as referenced in the Indictment.

This pervasive ambiguity is no small matter when coupled with the Indictment's complete lack of specific allegations regarding what acts any individual defendant is alleged to have taken. And the lack of clarity or certainty is particularly disturbing with respect to Ms. Carrano, because the Indictment never identifies her duties or responsibilities at KSC and no inferences can be drawn regarding what, if any, conduct she would have been aware of or in which she likely would have participated.[6] Likewise, the Indictment never claims that Ms. Carrano met or communicated with

---

[6]     The most the Indictment says about Ms. Carrano's role at KSC is that she was the company's "controller." (Dkt. 1 at 2 ¶ 4.) Doubtless, the Government hopes that the Court may

DiNoto or Criscuolo, never claims that she communicated with the companies that supposedly were defrauded, and fails even to allege that she had an opportunity to learn information essential to the purported scheme. Given this dearth of factual context and only indeterminate references to unspecified actors whenever essential conduct is mentioned, the Indictment fails to sufficiently allege that Ms. Carrano "agree[d] to pursue the same criminal objective" as her alleged co-conspirators, *Salinas*, 522 U.S. at 63–64, or had "a joint commitment" to any criminal endeavor "which, if completed, would satisfy all of the elements of the underlying substantive criminal offense." *Ocasio*, 578 U.S. at 287.

Moreover, even assuming the Indictment's allegations might provide sufficient notice to *some* defendants, they are still insufficient to allege that Ms. Carrano—an employee indisputably subordinate to her co-defendants—knowingly and willfully joined any conspiracy.[7] Since an employee can be expected inevitably to perform *some* administrative act relevant to an alleged scheme to defraud involving her employer, the Government must at least allege that the employee did *something* to make them a co-conspirator. In *United States v. Ham*, 998 F.2d 1247 (4th Cir. 1993), for example, the Fourth Circuit concluded that "[t]he government did not present sufficient evidence . . . to permit a jury to find that [a defendant] conspired with others with an intent to defraud" because, *inter alia*, that defendant was an employee who "took orders from [another],

---

assume from that title that Ms. Carrano exercised some managerial authority and thus could plausibly have been expected to participate in various aspects of the alleged scheme. But the Indictment never explains what being a "controller" at KSC means, nor is it a term of art that consistently connotes particular duties or responsibilities. As such, no legitimate inferences can be drawn merely because the Indictment labels Ms. Carrano a "controller"—and certainly none that would justify filling factual gaps with implicit allegations the Government never made.

[7]     As noted above, "notice is only half of the question." *Hooker*, 841 F.2d at 1230. In all events, the Indictment's vague allegations impermissibly would allow the Government at trial to "fill in elements of its case with facts other than those considered by the grand jury.'" *Elshinawy*, 228 F. Supp. 3d at 537.

who exercised complete control over" their joint activities. *Id.* at 1254. Finding that the defendant in question merely "determined if the shop was capable of performing [certain] jobs, ordered the supplies, and carried out the work," the Fourth Circuit made clear that "[n]one of these activities evidence a specific intent to defraud."[8] *Id.* So too, here. As noted, the Indictment is silent regarding Ms. Carrano's duties and responsibilities at KSC. But it clearly establishes that she was subordinate to her co-defendants, who are identified as being "an owner and president" and "an owner and vice-president" of KSC. (*See, e.g.*, Dkt. 1 at 1–2 ¶¶ 2–3.) And the only allegations regarding any specific acts possibly undertaken by her (or unspecified "other KSC employees"), which again are not incorporated by reference into Counts One through Eighteen,[9] relate to sending FedEx mailings—clerical work akin to the administrative tasks rejected in *Ham*.[10] (*See* Dkt. 1 at 9 ¶ 2(a).)

The Indictment's failure to allege any essential facts regarding Ms. Carrano in particular is especially prejudicial in light of the broad statutes charged by the Government. Where, as here, "the words of a statute are used to describe the offense generally, they 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which [s]he is charged.'" *Brandon*, 298 F.3d at 310

---

[8] The court in *Ham* considered whether evidence was sufficient to convict the defendant after trial. *See* 998 F.2d at 1254. At this stage, of course, the Court does not attempt to weigh the evidence. The point here is that there is nothing to weigh because Counts One through Eighteen contain *no* allegations about any particular acts supposedly undertaken by Ms. Carrano. And the Government cannot simply punt and fill in those crucial gaps later at trial. *See Elshinawy*, 228 F. Supp. 3d at 537.

[9] If allegations in another count are not expressly incorporated, they are not considered. *See, e.g.*, *Hooker*, 841 F.2d at 1231 ("[T]he law in this circuit does not support the government's position that a missing element can be read into an indictment from another count—at least not when the challenged count fails to incorporate the other counts by reference.").

[10] The alleged performance of these tasks further belies any assumption that a "controller" at KSC exercises managerial control or oversight. *See supra* note 6.

(quoting *Hamling*, 418 U.S. at 117–18). Thus, "for an indictment to fulfill the functions of notifying the defendant of the charges against h[er] and of assuring that [s]he is tried on the matters considered by the grand jury, the indictment must state some fact specific enough to describe *a particular criminal act*, rather than a type of crime." *United States v. Blair*, No. CR ELH-19-00410, 2021 WL 4339132, at *9 (D. Md. Sept. 23, 2021) (quoting *United States v. Pirro*, 212 F.3d 86, 92–93 (2d Cir. 2000)) (emphasis added). Failing to specify, in a multi-defendant case, any actions purportedly undertaken *by Ms. Carrano* patently does not specify a particular criminal act or provide all essential facts constituting the offenses charged. Put plainly, the Indictment never answers the fundamental question: what is Ms. Carrano actually alleged to have done or agreed to do?[11] An Indictment devoid of allegations specific to that fundamental question is insufficient, because "[a] cryptic form of indictment in cases of this kind requires the defendant to go to trial with the chief issue undefined." *Russell*, 369 U.S. at 766. That is precisely what the Constitution and Rule 7 prohibit.

At bottom, Count One contains only vague and general allegations that never specify what any individual defendant knew, specifically intended, did, or directed. *Cf. United States v. Padgett*, 188 F.3d 505 (4th Cir. 1999) ("In assessing the sufficiency of an indictment the issue is whether the indictment as a whole is so vague that it violates the defendant's rights."). In fact, the

---

[11] The Government's uniform reliance on collective references raises the separate question of whether the grand jury was properly instructed regarding what it needed to find with respect to each defendant. If the evidence before the grand jury also did not specify which defendants took or directed particular steps, then it is unclear how that grand jury could properly have found probable cause to believe that the Indictment was sufficient as to each defendant. As noted, this is impossible to tell from the face of the Indictment. Accordingly, if the Court does not dismiss the Indictment as to Ms. Carrano, it should order the unsealing and production of the grand jury minutes in this case to permit defense counsel to determine whether any additional motions may be appropriate. *See* Fed. R. Crim. P. 6(e)(3)(iii) (permitting, *inter alia*, "disclosure . . . of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury").

Indictment's fraud allegations closely mirror the practice of "group pleading," which even in civil litigation "fails to satisfy the requirement that the who, what, where, why, and when of the fraud be specified." *Glaser v. Enzo Biochem, Inc.*, 303 F. Supp. 2d 724, 734 (E.D. Va. 2003), *aff'd in part, rev'd in part on other grounds*, 126 F. App'x 593 (4th Cir. 2005); *see also In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 888 (W.D.N.C. 2001) (describing group pleading as the "practice of contending that because of their positions as corporate officers, defendants must have known of the allegedly false and misleading nature of all the alleged misstatements, and are therefore collectively responsible"). While the Fourth Circuit has "never addressed the issue of whether the group pleading presumption should be recognized in this Circuit" for civil complaints, *Dunn v. Borta*, 369 F.3d 421, 434 (4th Cir. 2004), it has previously rejected the "impermissible aggregation of defendants without specifically alleging which defendant was responsible for which act" as "insufficient either to provide a defendant with fair notice of the claim against him or to protect a defendant . . . ." *Juntti v. Prudential-Bache Sec., Inc.*, 993 F.2d 228, 228 (4th Cir. 1993); *see also In re Medimmune, Inc. Sec. Litig.*, 873 F. Supp. 953, 960 & n.7 (D. Md. 1995) (concluding that group pleading "is squarely at odds with" Fourth Circuit precedent and that "specific statements must be attributed to specific individuals"). Similar aggregation of defendants in criminal fraud cases likewise fails to provide adequate notice and demonstrates that an indictment does not "contain a 'statement of the essential facts constituting the offense charged,'" *Brandon*, 298 F.3d at 310 (quoting Fed. R. Crim. P. 7(c)(1) (emphasis omitted)), with sufficient "factual particularity" to "ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *Elshinawy*, 228 F. Supp. 3d at 537 (internal citation omitted).

"At best," this Indictment "amounts to a conclusory allegation that each [d]efendant was somehow responsible for the wrongful conduct," and "[a]t worst, the repeated refrain that all three individuals committed each and every act must be read as an allegation that *one of the three* did each act, an assertion that amounts to speculation and which is deficient . . . ." *Borkowski v. Baltimore Cnty., Maryland*, 414 F. Supp. 3d 788, 803 (D. Md. 2019) (quoting *Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 744 (D. Md. 2008) (emphasis in original)). Either way, the allegations are insufficient to sustain the Indictment. Indeed, even where group pleading "can be permissible . . . , it must be 'plausible that each defendant was involved in *all* of the facts as alleged.'" *McPherson v. Baltimore Police Dep't*, 494 F. Supp. 3d 269, 280 (D. Md. 2020) (quoting *Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CIV. CCB-13-617, 2013 WL 3776933, at *2 (D. Md. July 17, 2013) (emphasis added).

Given the significant differences in roles, responsibilities, access, and knowledge of each defendant, the Indictment does not meet that threshold. The Government has "simply attempt[ed] to use group pleadings to extend their conspiracy allegations" to three people "who had no specifically alleged involvement in the problematic portions" of the conduct underlying the charged offenses, without alleging "any plausible factual basis" to support across-the-board culpability. *Id.* If such general allegations are insufficient to sustain a civil complaint, which need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), they certainly are insufficient to satisfy constitutional protections for criminal defendants that require "heightened scrutiny to ensure that every essential element of an offense has been charged." *Perry*, 757 F.3d at 171.

### c. The Indictment fails to adequately allege that Ms. Carrano committed substantive violations of the wire and mail fraud statutes

Counts Two through Eighteen charge Ms. Carrano with substantive violations of the wire and mail fraud statutes in violation of 18 U.S.C. §§ 1341 and 1343.[12]  "The government must prove (1) that the defendant devised a scheme to defraud, and (2) that, to execute the scheme, the defendant transmitted any writing or signal by wire in interstate commerce." *United States v. Doty*, 832 F. App'x 174, 177–78 (4th Cir. 2020) (citing *United States v. Curry*, 461 F.3d 452, 457 (4th Cir. 2006)).  "Mail fraud requires the same two elements—substituting use of the mail for use of a wire." *Id.*  With respect to both wire and mail fraud, the Government must prove that Ms. Carrano "acted with the specific intent to defraud . . . ." *Watlington*, 287 F. App'x at 261.

"[I]n a mail- or wire-fraud prosecution, 'it is settled that each mailing or wire transmission in furtherance of the fraud scheme constitutes a separate offense, and it may be separately punished.'" *Doty*, 832 F. App'x 174 (quoting *United States v. Jefferson*, 674 F.3d 332, 367 (4th Cir. 2012)).  In other words, "the mailing or wire transmission itself—*i.e.*, misuse of the mail or wire—has consistently been viewed as the *actus reus* that is punishable by federal law." *Jefferson*, 674 F.3d at 367.  Such acts, then, must be the predicates of the offenses alleged in Counts Two through Eighteen.  The irresolvable problem for the Government is that the Indictment never actually alleges *who* misused the mail or wires.  Instead, the Indictment alleges that "[o]n or about the dates listed below . . . *the defendants*, . . . for the purpose of executing and attempting to execute

---

[12]     Although the Indictment includes stray citations to 18 U.S.C. § 2 at the end of the paragraphs pertaining to Counts Two through Eighteen (*see* Dkt. 1 at 7–8), there is no allegation anywhere in the Indictment that *any* defendant—let alone Ms. Carrano—aided and abetted the charged crimes.  And it is well settled that "in testing the sufficiency of an indictment, 'it is the statement of facts in the pleading, rather than the statutory citation that is controlling." *Hooker*, 841 F.2d at 1227–28 (quoting *United States v. Wuco*, 535 F.2d 1200, 1202 n.1 (9th Cir. 1976), *cert. denied*, 429 U.S. 978 (1976)).

the scheme to defraud, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communications, certain writings, signs, signals, and sounds, as set forth below" in the provided table. (Dkt. 1 at 6 ¶ 2 (emphasis added).) But "it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves *fully, directly, and expressly, without any uncertainty or ambiguity*, set forth all the elements necessary to constitute the offence intended to be punished." *Russell*, 369 U.S. at 765 (citing *United States v. Carll*, 105 U.S. 611, 612 (1881)) (emphasis added). This Indictment does not. And the Government's apparent assumption that all defendants are interchangeable as part of a common scheme is plainly insufficient when alleging the *commission* of substantive mail and wire fraud offenses. *See, e.g.*, *Jefferson*, 674 F.3d at 366 (explaining that "[t]he scheme to defraud is clearly an essential element, but not an essential *conduct* element, of wire (or mail) fraud" (emphasis in original)).

Because the Indictment never specifies who did what, it does not sufficiently allege that Ms. Carrano in particular "act[ed] knowingly and with the specific intent to deceive, for the purposes of causing some financial or property loss to another." *United States v. Allen*, 491 F.3d 178, 187 (4th Cir. 2007) (approving instruction for "intent to defraud"); *accord United States v. Ellis*, 326 F.3d 550, 556 (4th Cir. 2003) (approving instruction defining "intent to defraud" as meaning "to act with a specific intent to deceive or cheat, ordinarily, for the purpose of either causing some financial loss to another or bringing about some financial gain to one's self"). Indeed, the Indictment never indicates whether Ms. Carrano took any "action, such as the act of . . . . making a telephone call" or sending an email, *Jefferson*, 674 F.3d at 367 (citing *United States v. Ramirez*, 420 F.3d 134, 144–45 (2d Cir. 2005)), let alone whether she did so with a particular intent. A specific intent to defraud, however, is an essential element of the charged offenses. *Watlington*, 287 F. App'x at 261. And the Indictment was required to allege that element

specifically as to Ms. Carrano, and not merely in a general and ambiguous fashion.  *Cf. Carll*, 105 U.S. at 613 (finding indictment failed to charge a crime where it did not explicitly allege an implicit element recognized by courts).  It does not.

The Indictment's table of alleged wire communications does nothing to fix this fundamental problem.  With respect to communications presumably believed to have been sent by some defendant, the table notes only "[e]mail sent from KSC email account."  (Dkt. 1 at 6 ¶ 2.) The remaining entries are equally vague, indicating only an "[e]mail sent from D[iNoto]'s C&A email account."[13]  (*Id.*)  Nothing in the table identifies *who* sent the offending wires—or even who controlled the "KSC email account" from which messages purportedly were sent.   At trial, however, the Government would be required to prove beyond a reasonable doubt that Ms. Carrano "knew that h[er] conduct as a participant in the scheme was calculated to deceive and, nonetheless, [s]he associated h[er]self with the alleged fraudulent scheme for the purpose of causing some loss to another."  *Allen*, 491 F.3d at 187.  At a minimum, the Indictment was therefore required to allege what Ms. Carrano did and when with respect to the specified wires and mailings, because to serve as the basis for criminal liability a "guilty act . . . must be contemporaneous with the guilty mind." *Jefferson*, 674 F.3d at 367 (quoting *United States v. Muzii*, 676 F.2d 919, 920, 923 (2d Cir. 1982)). That is impossible to tell from this Indictment, because it does not say whose state of mind corresponds with the alleged guilty acts.  And that fails to set forth a "statement of the *essential facts* constituting the offense charged.'"  *Brandon*, 298 F.3d at 310 (quoting Fed. R. Crim. P. 7(c)(1) (emphasis in original)).

---

[13]     Notably, the Indictment never even alleges that DiNoto actually sent or received messages using what they refer to as "D[iNoto]'s C&A email account."  (*See* Dkt. 1 at 6 ¶ 2.)  In contrast, the allegations supporting Count One allege specific actions purportedly undertaken by DiNoto. (*See id.* at 4 ¶ 15, 5 ¶ 19.)  This omission is extremely significant in the context of an email account (especially a company-provided email account), since it can be used by multiple people.

### d. The Indictment fails to adequately allege interstate transmission and venue sufficient to establish substantive violations by Ms. Carrano of the wire fraud statute

As noted above, Counts Two through Fifteen charge Ms. Carrano with substantive violations of the wire fraud statute, in violation of 18 U.S.C. § 1343. In addition to the fatal deficiencies identified above, the Indictment also fails to sufficiently allege both that the wires in question were transmitted in interstate commerce and proper venue with respect to those counts. These deficiencies independently require dismissal of Counts Two through Fifteen.

With respect to those counts, the Indictment alleges that "[o]n or about the dates listed below [in the provided table], in the District of Maryland, the defendants, . . . for the purpose of executing and attempting to execute the scheme to defraud, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communications, certain writings, signs, signals, and sounds, as set forth below [in the provided table]." (Dkt. 1 at 6 ¶ 2.) As discussed above, the Indictment then includes a table that purports to identify fourteen interstate wires that form the basis of Counts Two through Fifteen. Crucially, however, that table indicates only that each email was sent or received by a "KSC email account" and "D[iNoto]'s C&A email account." (*Id*.) Again, nothing in the table identifies *who* sent these alleged messages—or even who used accounts from which the messages purportedly were sent. Further, the table is silent regarding *where* any of the messages were created, sent, or received, and *where* the accounts in question were hosted or used.

This is especially significant because the table comprises all of the substantive allegations particular to Counts Two through Fifteen. As such, none of the allegations pertaining to those counts actually claim that any of the specified wires originated, terminated, or were sent or received in the District of Maryland or crossed state lines. But "[t]he wire transmission itself is 'the actus reus that is punishable by federal law.'" *United States v. Elbaz*, 52 F.4th 593, 603 (4th

Cir. 2022), *cert. denied*, 144 S. Ct. 278 (2023) (quoting *Jefferson*, 674 F.3d at 367). Were it otherwise, Counts Two through Fifteen "would invite [] dismissal . . . for multiplicity—a constitutional doctrine implicating both the Double Jeopardy Clause and Fifth Amendment due process." *Jefferson*, 674 F.3d at 368 n.47. And "[w]hen an indictment does not accurately and clearly allege all the ingredients of which [an] offense is composed," it is "insufficient" and the deficient counts must be dismissed. *United States v. Pomponio*, 517 F.2d 460, 463 (4th Cir. 1975). Thus, the Indictment was required to allege facts sufficient to establish that each wire transmission meets the elements of wire fraud. One of those elements is that "the defendant transmitted any writing or signal by wire in interstate commerce" in order to effectuate an illegal scheme. *Doty*, 832 F. App'x at 177–78.

Counts Two through Fifteen do not allege any facts sufficient to establish that the relevant conduct—*i.e.* sending or receiving the alleged wires set forth in the table—involved transmissions in interstate commerce. This "conduct element is one of action, such as the act of putting a letter in the mailbox or making a telephone call." *Jefferson*, 674 F.3d at 367 (citing *Ramirez*, 420 F.3d at 144–45). To be sure, the Indictment does include boilerplate allegations that the specified conduct occurred "in the District of Maryland" and that wire communications were knowingly transmitted "in interstate commerce." (Dkt. 1 at 6 ¶ 2.) But those bare assertions, unadorned by any factual allegations, are insufficient to satisfy the Government's burden.[14] *Compare United States v. Verclas*, No. GJH-18-160, 2019 WL 95148, at *4 (D. Md. Jan. 3, 2019) (dismissing indictment containing a similar boilerplate allegation based on improper venue for failing to "allege that the [d]efendant committed any conduct element of the crime in the District of

---

[14] This is another reason why Defendants previously sought a bill of particulars here, and why the Court should order the Government to provide one.

Maryland"), *with United States v. Verclas*, No. GJH-18-160, Dkt. 1 at 3 ¶ 10 (D. Md.) (alleging

that charged conduct occurred "in the District of Maryland and elsewhere"); *cf. Brandon*, 298 F.3d

at 310 ("[S]imply parroting the language of the statute in the indictment is insufficient.");

*Elshinawy*, 228 F. Supp. 3d at 537 (explaining that "factual particularity" is necessary to "ensure

that the prosecution will not fill in elements of its case with facts other than those considered by

the grand jury").

The Indictment's boilerplate allegations are uniquely insufficient here, because—without

further factual elaboration—they are internally inconsistent.  Specifically, the Indictment alleges

that conduct with respect to Counts Two through Fifteen occurred "in the District of Maryland"

(Dkt. 1 at 6 ¶ 2), unlike Count One, which alleges that conduct occurred "in the District of

Maryland *and elsewhere*" (*id.* at 3 ¶ 10 (emphasis added); *accord id.* at 3 ¶ 11).  Since the District

of Maryland is co-extensive with the State of Maryland,[15] conduct occurring entirely within the

District of Maryland is not "interstate."  And the failure to allege facts sufficient to establish

interstate transmission warrants dismissal of the defective count.  *See, e.g.*, *Hooker*, 841 F.2d at

1227 (vacating conviction and dismissing count because the indictment "failed to allege that the

enterprise had any effect on interstate commerce or to state, either directly or through incorporation

by reference, any facts that would show that the enterprise affected interstate commerce").

Of course, many indictments charge interstate conduct that originates or ends in a particular

district, especially in the context of wire fraud, which is a "continuing offense" that may tried in

multiple districts.  *United States v. Ebersole*, 411 F.3d 517, 527 (4th Cir. 2005); *see also* 18 U.S.C.

§ 3237 (defining continuing offenses).  But in such cases, the allegations in those indictments at

---

[15]     *See, e.g.*, Judiciary Act of 1789, ch. 20, 1 Stat. 73 (Sept. 24, 1789) (establishing, *inter alia*,
"[t]hat the United States shall be, and they hereby are divided into thirteen districts," including
"one to consist of the State of Maryland, and to be called [the] Maryland District").

least support an inference that a portion of the key conduct occurred in another state. As already discussed at length, this Indictment is uniquely bare of any factual allegations that would permit an inference about *who* sent any of the messages alleged in Counts Two through Fifteen, let alone where that person was located, where the relevant email accounts were hosted or used, or whether the alleged messages necessarily crossed state lines.[16] It does not suffice simply to assert—without any factual basis—that these transmissions qualify as "interstate" communications. *See Brewbaker*, 87 F.4th at 579 (noting that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

That conclusion does not change merely because Counts Two through Fifteen incorporate by reference the allegations in "Paragraphs 1 through 10 and paragraphs 12 through 20 of Count One." (Dkt. 1 at 6 ¶ 1.) Those paragraphs allege general information regarding the names and job titles of the various defendants; the locations of, and general information regarding, the companies alleged to be involved; and a high-level description of the alleged conspiracy and scheme to defraud. As discussed above, however, the preceding paragraphs are bereft of factual allegations sufficient to provide a "definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). And in any event, they say absolutely nothing about the particular substantive wires alleged to be the basis for Counts Two through Fifteen. While it might be tempting, based on the prior allegations, to speculate somewhat about other facts—such as, for

---

[16] In contrast, although Counts Sixteen through Eighteen suffer from a similar lack of specificity—including, among other things, failing to identify who actually sent the alleged mailings and likewise alleging that the conduct occurred only "in the District of Maryland" (Dkt. 1 at 8 ¶ 2)—the table of three discrete mailings provided to specify the basis for those charges at least identifies the locations to which and from which the mailings were sent. (*See id.*) That information provides at least *some* basis for concluding that, as a whole, the Indictment sufficiently alleges interstate transmission as to Counts Sixteen through Eighteen. Counts Two through Fifteen, in contrast, contain no additional factual detail that might save them.

example, assuming that since KSC was headquartered in New Jersey then certain emails may have been sent from or received in that state—such speculation flies in the face of the requirement that "the grand jury have considered and found all elements to be present." *Hooker*, 841 F.2d at 1230.

For similar reasons, the Indictment likewise fails to allege venue with respect to Counts Two through Fifteen. *See* U.S. CONST., art. III, § 2, cl. 3 (requiring that "[t]he trial of all crimes . . . shall be held in the state where the said crimes shall have been committed"); *id.*, amend. VI (providing that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed"); Fed. R. Crim. P. 18 (stating that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed"). "[V]enue is proper where wire fraud 'occurred,' including where each wire transmission was sent and where it was ultimately received." *Elbaz*, 52 F.4th at 604; *accord Ebersole*, 411 F.3d at 527 (explaining venue for wire fraud lies "both where [the wire] was sent and where it was received" (quoting *United States v. Kim*, 246 F.3d 186, 191 (2d Cir. 2001))). As explained, Counts Two through Fifteen contain no information whatsoever about where the specified wires were sent and received. And although the Indictment includes the boilerplate allegation that conduct relating to Counts Two through Fifteen occurred "in the District of Maryland" (Dkt. 1 at 6 ¶ 2), that is insufficient to establish venue as to the essential conduct of the substantive crimes charged. *See Verclas*, 2019 WL 95148 at *4 (dismissing indictment alleging conduct occurred "in the District of Maryland and elsewhere" for improper venue because it failed to allege the defendant "committed any conduct element of the crime in the District of Maryland"); *cf. Jefferson*, 674 F.3d at 367 (rejecting venue for wire fraud where acts in furtherance of the crime occurred in the relevant district but "the physical act of transmitting the wire communication for the purposes of

executing the fraud scheme" did not). Thus, Counts Two through Fifteen should also be dismissed as to Ms. Carrano for this reason.

### e. *The Indictment fails to adequately allege that Ms. Carrano made false and material statements*

Count Nineteen charges Ms. Carrano with making false and material misstatements in violation of 18 U.S.C. § 1001(a)(2). (Dkt. 1 at 9–10 ¶¶ 1–2.) Notably, Ms. Carrano is alleged to have made the materially false statements during two voluntary proffers with the Government—proffers that were neither recorded nor transcribed, and which are memorialized only in notes and summary reports created by law enforcement agents that do not purport to be verbatim records.[17] In particular, Count Nineteen alleges three specific statements that are alleged to have been materially false. (*See* Dkt. 1 at 9–10 ¶¶ 2(a)–(c).) None of the alleged statements, whether independently or in combination with other allegations in the Indictment, is sufficiently precise to serve as a basis for Section 1001 liability under Fourth Circuit law.

The elements of the offense charged in Count Nineteen "are the making (a) in any matter within the jurisdiction of any department or agency of the United States, of (b) a false statement of (c) material fact with (d) fraudulent intent." *United States v. Race*, 632 F.2d 1114, 1116 (4th Cir. 1980). Any purportedly false statement forming the basis of such a charge must be alleged

---

[17] Ms. Carrano does not agree that all of the allegations in the Indictment underlying Count Nineteen accurately capture the questions and answers exchanged during those proffers. For purposes of this motion, she focuses only on those allegations. There is, however, significant prejudice to Ms. Carrano given the lack of a reliable record of her allegedly false statements. *See, e.g.*, *United States v. Ehrlichman*, 379 F. Supp. 291, 292 (D.D.C. 1974) (concluding "that § 1001 was improperly invoked" and entering a judgment of acquittal because, *inter alia*, "the absence of a transcript" would make evaluating the falsity of the alleged statements "nearly impossible" given that the defendant "was faced with the difficult task of arguing that his statements to the F.B.I. were literally true on the sole basis of the agent's sketchy notes, which do not purport to be a verbatim record of either the questions or the answers at issue and which were not even shown to him until shortly before trial").

with special precision, as "[a] prosecution for a false statement under § 1001 . . . cannot be based on an ambiguous question where the response may be literally and factually correct." *United States v. Good*, 326 F.3d 589, 592 (4th Cir. 2003) (quoting *United States v. Vesaas*, 586 F.2d 101, 104 (8th Cir. 1978)). That is because the Government cannot "obtain a perjury conviction on the basis of a statement that is literally true, even if that statement is misleading." *United States v. Baer*, 92 F. App'x 942, 944 (4th Cir. 2004). Even assuming the truth of the Indictment's allegations, the claimed material misstatements are insufficient to clear that bar.

First, the Indictment alleges that Ms. Carrano "stated that she did not know the reason why KSC had the address of D[iNoto]'s personal residence in Maryland," despite knowing that "she and other KSC employees regularly sent cash payments via FedEx to the address of D[iNoto]'s personal residence from August 2015 to December 2019." (Dkt. 1 at 9 ¶ 2(a).) The implication seems to be that Ms. Carrano's supposed knowledge of payments sent to DiNoto during a particular period disproves her statement that "she did not know the reason why KSC had [his] address . . . in Maryland." (*Id.*) But the Indictment never alleges that the reason KSC had DiNoto's address was to send such payments, nor does it allege that Ms. Carrano actually knew the reason KSC had DiNoto's address. Instead, the Indictment alleges only that Ms. Carrano knew payments were sent to that address.

While having DiNoto's address made it possible for KSC to mail payments, it does not follow—and the Indictment does not allege—that sending those payments was "the reason why KSC had the address" in the first place. (*Id.*) That is especially true here, as the Indictment separately alleges that DiNoto was an employee of KSC's admitted counterparty with whom KSC regularly communicated, including regarding concededly legitimate matters. (*See, e.g.*, *id.* at 2 ¶¶ 6–7, 5 ¶ 19.) In short, even if Ms. Carrano knew that payments were sometimes sent to DiNoto,

that does not mean that Ms. Carrano lied when she denied "know[ing] the reason why KSC had" DiNoto's address. And because the Indictment never alleges that Ms. Carrano actually knew the reason KSC had DiNoto's address—or that the reason was to send payments to DiNoto—the supposedly false statement alleged by the Government is ambiguous, potentially literally correct, and uncontroverted by other allegations. It cannot serve as a basis for Section 1001 liability. *See Baer*, 92 F. App'x at 944; *Good*, 326 F.3d at 592; *see also United States v. Kerik*, 615 F. Supp. 2d 256, 273–74 (S.D.N.Y. 2009) (granting a motion to dismiss indictment in part after finding that certain questions were "fundamentally ambiguous and may not serve as predicates for the false statement charges in the Superseding Indictment").

Second, the Government alleges that Ms. Carrano "stated that she and other KSC employees only used FedEx to send gifts, like baseball tickets, to customers," despite knowing that "she and other KSC employees used FedEx to regularly send cash payments to D[iNoto]'s residence in Maryland from August 2015 to December 2019." (Dkt. 1 at 9 ¶ 2(b).) Again, however, the Indictment's allegation of falsity is insufficient. As noted already, DiNoto was in fact a "customer" as an employee of KSC's counterparty. (*See id.* at 2 ¶¶ 6–7.) According to the Indictment, Ms. Carrano and other KSC employees used FedEx to send gifts to customers. And gifts may, of course, include cash. *Cf. Lane v. United States*, 286 F.3d 723, 726 (4th Cir. 2002) (noting that individuals "made substantial cash gifts to charity from 1983 through 1993"); *Younis v. Farooqi*, 597 F. Supp. 2d 552, 555 (D. Md. 2009) (discussing the impact of "whether cash gifts should mitigate [a] defendant's contractual obligation"). The Indictment never alleges that the referenced payments were *not* customer gifts, that such gifts could not include cash, or that gifts supposedly sent by Ms. Carrano or other KSC employees—cash or otherwise—were at all

connected to the alleged scheme.[18]  Thus, Ms. Carrano's statement is again ambiguous, potentially literally correct, and uncontroverted by other allegations.  Even assuming that her statement "may have been misleading, even deliberate evasiveness does not provide a basis for a perjury prosecution when the answer provided is facially correct."[19]  *Baer*, 92 F. App'x at 946 (citing *Bronston v. United States*, 409 U.S. 352, 360 (1973)).

Third, the Government alleges that "regarding the words 'Gene paid' handwritten by the defendant on a QuickBooks summary of transactions," Ms. Carrano "stated that she did not know what was paid to 'Gene,'" despite knowing that "she and other KSC employees regularly sent cash payments via FedEx to D[iNoto]'s personal residence from August 2015 to December 2019." (Dkt. 1 at 9 ¶ 2(c).)  Like the other two statements specified in Count Nineteen, the Indictment's allegation of falsity is insufficient.  Here again, the implication seems to be that Ms. Carrano's supposed knowledge of payments sent to DiNoto during a particular period disproves her statement that "she did not know what was paid to 'Gene'" in connection with a specific notation "on a QuickBooks summary of transactions."  (*Id.*)  But as before, the Indictment conspicuously fails to allege key information necessary to make Ms. Carrano's statement false.  In particular, the Indictment never alleges that this "Gene paid" notation referred to payments mailed to DiNoto between August 2015 to December 2019, or that Ms. Carrano in fact knew what "Gene" was

---

[18]    To be sure, the Indictment also alleges that Ms. Carrano "stated that she and other KSC employees only used FedEx to send gifts, *like baseball tickets*, to customers . . . ."  (Dkt. 1 at 9 ¶ 2(b) (emphasis added).)  But this does not help the Government, since Ms. Carrano is not alleged to have claimed that gifts *only* consisted of baseball tickets or that KSC never sent other gifts.

[19]    Ms. Carrano would dispute any characterization of her response as misleading based on what actually occurred during the proffers.  Again, however, for purposes of this motion she focuses solely on what the Indictment alleges.

"paid."[20]  *Cf. Baer*, 92 F. App'x at 945 (citing *Good*, 326 F.3d at 592, and noting that "the court

rejected the Government's argument that [the defendant]'s answer was inconsistent with the *intent*

of the question" (emphasis in original)).  Instead, the Indictment alleges only that Ms. Carrano

knew that some payments were sent to DiNoto's address, without specifying any connection with

her response regarding the QuickBooks notation.  As a result, this statement too is ambiguous,

potentially literally correct, and uncontroverted by other allegations in the Indictment.

At first blush, these distinctions might seem (and the Government no doubt will argue they

are) small or immaterial.  But they are important.  Small discrepancies may prevent the imposition

of criminal liability, and factual distinctions—even fine ones—are crucial when a defendant is

accused of knowingly providing a false answer intended to deceive.  In such circumstances, the

Government properly bears the burden of alleging facts that, if proved, *actually demonstrate*

falsity.  *See Brandon*, 298 F.3d at 310 (quoting Fed. R. Crim. P. 7(c)(1), and emphasizing that "the

indictment must also contain a 'statement of the essential facts constituting the offense charged'"

(emphasis omitted)); *Elshinawy*, 228 F. Supp. 3d at 537 (quoting *Walsh*, 194 F.3d at 44, and

observing that "factual particularity must 'ensure that the prosecution will not fill in elements of

its case with facts other than those considered by the grand jury'").  It has not done so here.  Nor

is it sufficient for the Government merely to imply that Ms. Carrano intended to deceive law

enforcement through the specified statements.  Rather, the Government must allege that Ms.

Carrano "made a statement to government agents that *was untrue*, and . . . cannot satisfy that

burden by showing that the defendant *intended* to deceive, if in fact [s]he told the literal truth."

*United States v. Castro*, 704 F.3d 125, 139 (3d Cir. 2013) (emphasis added); *cf. Bronston*, 409

---

[20]      In fact, the Indictment fails even to allege that "Gene" is a reference to DiNoto.  While that
is one assumption that could be made, "Gene" is not so uncommon a name that *any* such reference
in KSC's books and records must refer to DiNoto.

U.S. at 362 (holding that a conviction under the federal perjury statute cannot rest on testimony that is unresponsive to the interrogation, even if intentionally deceptive, so long as an answer is literally true and the questioner was free to clarify).

Given the Indictment's deficient allegations, Ms. Carrano's allegedly false statements "may be literally and factually correct." *Good*, 326 F.3d at 592 (quoting *Vesaas*, 586 F.2d at 104).  And regardless, even if the Indictment had sufficiently alleged false statements by Ms. Carrano, nothing in Count Nineteen alleges any basis for inferring that the ministerial actions referenced in those statements and supposedly taken by Ms. Carrano and other unspecified (and uncharged) KSC employees were "material" matters.[21] *Race*, 632 F.2d at 1116.  Indeed, though it references "gifts," "cash," and supposed payments to "Gene," the Indictment never alleges that any of those were connected to the alleged scheme to defraud.  These inadequate allegations cannot serve as the basis for a Section 1001 charge and Count Nineteen should be dismissed.

## III.  CONCLUSION

For the foregoing reasons, the Indictment fails to apprise Ms. Carrano with reasonable certainty of the charges against her and its vague allegations fail to state facts essential to the offenses charged.  The Indictment thus does not provide notice to Ms. Carrano sufficient to enable her to plead double jeopardy or prepare her defense at trial, nor does it ensure that the grand jury

---

[21]    Further undermining any assumption that such matters might be material is the fact that the Indictment alleges all of these actions were conducted "regularly" (Dkt. at 9–10 ¶ 2), while only *some* of KSC's invoices are claimed to be false.  (*See id.* at 5 ¶ 19 (conceding that "true KSC invoices" were also submitted).)  This difference in frequency casts doubt on any inference that the conduct referenced in the alleged statements necessarily related to the alleged scheme.

considered and found all essential elements of the offenses charged.  Accordingly, Ms. Carrano

respectfully requests that the Court dismiss all counts alleged against her in the Indictment.

Dated: April 30, 2024
　　　New York, New York

　　　　　　　　　　　　　　　　　　　　/s/ *Jarrod L. Schaeffer*

David M. Eskew
Jarrod L. Schaeffer
ABELL ESKEW LANDAU LLP
256 Fifth Avenue, 5th Floor
New York, NY 10001
(646) 970-7340 / -7339
deskew@aellaw.com
jschaeffer@aellaw.com
(*pro hac vice*)

Evan T. Shea
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
(410) 528-4649
etshea@venable.com

*Counsel for Defendant Susan P. Carrano*

**CERTIFICATE OF SERVICE**

I certify that, on April 30, 2024, this document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will then serve a notification of the filing to the registered parties of record.

/s/ *Jarrod L. Schaeffer*

Jarrod L. Schaeffer