IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| V. | : |
| MICHAEL GEORGE VERZALENO, JR., | :  CRIMINAL NO. PX-23-0323-001 |
| Defendant. | : |
| | : |

...oooOooo...

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its counsel, Erek L. Barron, United States Attorney for the District of Maryland, and Martin Clarke, Timothy F. Hagan, and Joseph L. Wenner, Assistant United States Attorneys for said District, hereby submits its Sentencing Memorandum in the above-captioned case.

**I.      Background**

On September 14, 2023, the defendant, **Michael George Verzaleno, Jr.**, was indicted on multiple counts of wire fraud, mail fraud, and conspiracy to commit wire fraud for his role in a $3.5 million false invoicing scheme. ECF 1. On November 18, 2024, pursuant to a plea agreement, Verzaleno pled guilty before the Honorable Deborah K. Chasanow, Senior U.S. District Court Judge, to conspiracy to commit wire fraud (Count One), in violation of 18 U.S.C. § 1349. ECF 142-43. Verzaleno's sentencing is scheduled for **February 19, 2025, at 11:00 a.m.**

At his rearraignment, Verzaleno admitted to his role in the execution of a longstanding fraudulent scheme that used his drum vending company, Kearny Steel Containers, to steal $3.5 million from one of his corporate customers, Citrus and Allied Essences. For seven straight years, as the vice-president and part owner of Kearny Steel, Verzaleno regularly created and sent false

invoices that billed Citrus and Allied for drum deliveries that never took place. He successfully executed the scheme and avoided scrutiny all that time by paying cash kickbacks to a corporate insider at Citrus and Allied.

Due to the extraordinary length of the scheme and Verzaleno's integral role in it, as well as the large loss suffered by Citrus and Allied, a sentence of **27 months imprisonment** is sufficient, but not greater than necessary, to comply with the statutory sentencing goals set forth in 18 U.S.C. § 3553(a).

### A.   Stipulation to the Statement of Facts and Advisory Guideline Range

Pursuant to the plea agreement, Verzaleno stipulated to facts the government would have proven beyond a reasonable doubt had the case proceeded to trial. ECF 143-1 at 1. Consistent with those facts, Verzaleno also stipulated to the applicability of various sentencing factors set forth in the U.S. Sentencing Guidelines ("USSG"). *Id*. The agreed upon sentencing guideline factors for Count One are set forth below.

**Count One (Conspiracy to Commit Wire Fraud)**

| | |
|---|---|
| Base offense level (USSG §§ 2B1.1(a)(1) & 2X1.1(a) | 7 |
| Upward adjustment for **loss resulting from the offense (less than $3,500,000)** (USSG § 2B1.1(b)(1)(I)) | +16 |
| **Subtotal** | 23 |
| Downward adjustment for **Zero-Point Offender status** (USSG § 4C1.1) | -2 |
| Downward adjustment for **timely acceptance of responsibility** (USSG 3E1.1(a) &(b)) | -3 |
| **Subtotal** | 18 |
| Downward variance to avoid unwarranted sentencing disparity (18 U.S.C. § 3553(a)(6)) | -2 |
| **Final Adjusted Offense Level** | 16 |

The parties' approach to the calculation of the final adjusted offense level and applicable guideline range of **21 months to 27 months** is in accord with the Presentence Investigation Report ("PSR") issued by U.S. Probation. ECF 157 at 9-10 & 17 at ¶ 87.

## II.     The Law

A sentence must be both procedurally and substantively reasonable. *United States v. Blue*, 877 F.3d 513, 517 (4th Cir. 2017) (*citing Gall v. United States*, 552 U.S. 38, 41 (2007)). Reasonableness "is not measured simply by whether the sentence falls within the statutory range, but by whether the sentence was guided by the Sentencing Guidelines and by the provisions of § 3553(a)." *Blue*, 877 F. 3d. at 517 (*quoting United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006)). As the Fourth Circuit has noted,

> [A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence. If the court imposes a sentence outside the guideline range, it should explain its reason for doing so.

*Green*, 436 F.3d at 455–56 (*citing United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005)).

Pursuant to § 3553(a), the Court should "impose a sentence sufficient, but not greater than necessary" after considering all of the statutory sentencing factors. 18 U.S.C. § 3553(a). The sentencing factors the Court must consider are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
>      (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

*Id*.

## III. ARGUMENT

### a. A Sentence at the High End of the Guideline Range is Warranted Under § 3553(a)

#### 1. The False Billing Scheme Spanned Seven Years

Beginning in approximately 2013, Verzaleno was in regular contact with Eugene DiNoto, a Citrus and Allied employee in charge of ordering drum containers and authorizing payments to drum vendors. As president and part owner of Kearney Steel, a large drum supply business in New Jersey, Verzaleno would coordinate with DiNoto about whether to actually transport hundreds of drum containers from Kearny Steel's warehouse in Newark, New Jersey to Citrus and Allied in Harford County. If it was going to be a real delivery, Verzaleno would make sure DiNoto received a real invoice. If they decided that Verzaleno would not actually transport any drums to Citrus and Allied in a given week, Verzaleno would send a false invoice as a pretext for DiNoto to fraudulently authorize payment for a shipment of drums that never occurred.

For seven straight years, on approximately a bi-weekly basis, Verzaleno routinely worked in tandem with his father, Michael Verzaleno, Sr., and Kearny Steel's controller, Susan Carrano, to ensure the continued success and secrecy of their false billing scheme, which intermixed real invoices with false invoices sent to Citrus and Allied for payment. Verzaleno's primary role in the conspiracy was to be the go-between—the one tasked with maintaining the conspiratorial relationship with their embedded confederate at Citrus and Allied, Eugene DiNoto. That relationship required Verzaleno to schedule a kickback payment to DiNoto after the submission of each false drum invoice. Working closely with Susan Carrano, Verzaleno helped ensure that

fraudulent bills of lading were created and sent to DiNoto along with real ones, and that a FedEx package was sent to DiNoto's Maryland residence with at least $10,000 of cash as a kickback to reward him for his role in the scheme.

To ensure the continued stream of tens of thousands of dollars of illicit proceeds per month for selling absolutely nothing, Verzaleno kept in constant contact with DiNoto while seeking to avoid attracting scrutiny. To that end, Verzaleno and DiNoto engaged in coded conversations that enabled them to secretly discuss the timing of the false invoices and the size of the kickbacks. For example, instead of expressly talking about sending a $20,000 kickback, they would refer to it as "20 cap seals" or "20 bung caps." And Verzaleno would sometimes meet with DiNoto to pay him in person, or wine and dine DiNoto when DiNoto visited New Jersey.

Each of the hundreds of bogus invoices submitted to Citrus and Allied required Verzaleno's coordination with Carrano and/or Verzaleno Sr. They were the ones who were usually in the front office falsifying the details on the fictitious bills of lading that Verzaleno and DiNoto had agreed to submit, including falsifying the delivery date, quantity of drums, pricing, etc. In turn, approximately 150 corresponding FedEx packages containing DiNoto's cash kickbacks had to be shipped to DiNoto's house, and Verzaleno was the one who usually provided the cash to be put into those packages. Furthermore, Verzaleno helped coordinate the in-person payment of monthly cash kickbacks to a second co-conspirator, John Criscuolo, who had helped start the scheme with Verzaleno and DiNoto back in 2013 and continued to get kickbacks from Verzaleno until 2020.

The foregoing facts make it clear that Verzaleno was an active and integral part of a coordinated effort to steal millions from another company, an effort that regularly required his attention and focus—for seven years! That fact alone demands a long prison sentence at the high end of the guideline range, because Verzaleno never hesitated during all those years to make the many necessary decisions and acts in furtherance of the scheme. He had time to reflect and

reconsider his criminal involvement each time he sent an email, made a phone call, falsified a bill of lading, sent a false invoice, cashed a Citrus and Allied check, sent a FedEx package, reviewed KSC's accounts receivable, etc. Nothing dissuaded him over those seven years. He had no second thoughts about stealing millions of dollars that belonged to someone else. A continuing course of criminal conduct of this magnitude is not an aberration. Rather, it reflects dedication to a deliberate and continuous commitment to fleece Citrus and Allied at every chance. Nothing in the facts of this case or among the mitigating arguments remotely suggests that Verzaleno would have ever stopped if he had not been arrested.

> **b.  Given the Defendant's Wealth and Successful Businesses, There is No Reasonable Explanation for the Extent of His Criminal Conduct other than Greed.**

The vast majority of convicted criminals commit their crimes because of economic hardship, with many having a history of chronic drug abuse, some degree of mental illness, or a limited education. Here, the facts show that none of those reasons explain why Verzaleno engaged in a seven-year scheme to defraud Citrus and Allied.

Having completed three years of college, Verzaleno is a well-educated 54-year old man with no serious physical or mental health issues. PSR at 12-13. He has had the good fortune to work for his family's business, Kearny Steel, since he was twenty-one years old, which is most of his adult life,. *Id*. ¶ 72. He now owns 40% of the business (as president and CEO), as well as two other businesses. *Id*. ¶¶ 73, 75, 77. One of those businesses, National Packaging Services, is also a drum supply company, and it shares some of its assets with Kearny Steel.

Verzaleno is a wealthy man. He and his wife own multiple properties, including an expensive lake property, substantial investment accounts, an $800,000 yacht, and a $300,000 fishing boat. PSR at 14-15. His net worth is estimated to be approximately $10 million. *Id*. ¶ 76.

Despite his wealth, Verzaleno chose to prey upon the hardworking employees and owners at Citrus and Allied, another family-owned business. He was not satisfied with the considerable fruits of his own success. He had to rob others of the fruits of *their* labor. And he did it a particularly pernicious way: methodically and clandestinely using a mole within Citrus and Allied who served as Verzaleno's eyes and ears for years.

Based on the foregoing facts, Verzaleno's only motive for victimizing Citrus and Allied for so long was pure greed. He did not need the money, and he was not acting out of ignorance or any type of compulsion. Any mitigating argument to the contrary is not consistent with the facts of the case and the presentence investigation.

In sum, given the "history and characteristics of the defendant" and the advantages he has enjoyed for most of his life, a just punishment that reflects the seriousness of the offense and promotes respect for the law is 27 months' imprisonment. 18 U.S.C. § 3553(a).

    **c.**    **Ordering Restitution and Forfeiture is Appropriate**

A "just punishment for the offense" considers the range of harm to the victim. 18 U.S.C. § 3553(a)(7); *see also*, 18 U.S.C. § 3663A(a)(a)(1) (Mandatory Victim Restitution Act of 1996). The owners and employees of Citrus and Allied did not just suffer an economic harm of $3.5 million. They felt violated and taken advantage of because Verzaleno used one of their own, a company insider, to do his bidding. With DiNoto's help, it was as if Verzaleno unlocked a door or window at Citrus and Allied so he could secretly enter their company anytime he wanted to and plant fake documents that the employees would discuss, process, and rely on to do their jobs.

Pursuant to the plea agreement, restitution to Citrus and Allied is requested in the amount of $3.5 million, to be paid jointly and severally by the defendants. *See* ECF 143 at ¶ 11. The defendants have already provided the Clerk of the Court with a check in that amount in anticipation

of the Court affirming the restitution order entered on November 18, 2024 by The Honorable Deborah K. Chasanow.[1]  *See* ECF 154.

Also pursuant to the plea agreement, the government requests a Preliminary Order of Forfeiture that includes a money judgement in the amount of $1 million.  *See* ECF 143 at ¶ 13.  A proposed order will be sent to the Court prior to sentencing.[2]

### IV.   CONCLUSION

Verzaleno developed and maintained his conspiratorial relationship with DiNoto to the point where he was able to regularly bill Citrus and Allied continuously for seven years for thousands of drums that he never delivered.  Because of his attention to detail and unwavering greed, he never got caught.  Even though he did not need the money, he never paused to consider the impact on others.  Pursuant to all of the §3553 sentencing factors, a just punishment of 27 months incarceration is necessary to deter other unscrupulous people from victimizing honest businessmen.

---

[1] In his comments to U.S. Probation regarding the PSR, defense counsel requests a $1 million offset or credit toward the $3.5 million restitution amount based upon a $1 million insurance claim submitted by Citrus and Allied.  While the company did receive an insurance payment for that amount, that claim related to a different conspiracy to defraud Citrus and Allied involving a different company owned and operated by Anthony Urcioli, which had nothing to the with the defendants in this case.  *See United States v. Anthony Urcioli*, LKG-22-029 (D.Md 2022).  Indeed, Verzaleno was still under investigation had not even been indicted when the defendant in that other case was sentenced and ordered to pay restitution.  *Id*. (ECF 40).

[2] Also in his comments to U.S. Probation, defense counsel characterized Verzaleno as having a "substance abuse history." (letter of 11-14-25). However, Verzaleno reported that he only "tried" marijuana twice when he was 30 years old, which was 24 years ago, but no drug use since.  ECF 157 ¶ 66.  As for alcohol, Verzaleno reported no prior history of abuse.  *Id*. at 67.  He noted that his "drinking has increased recently" due to the stress of this case.  *Id*.  However, his wife reported that "she does not ever feel that it is excessive"; "she does not feel that it has caused him problems"' and "he still works daily and manages his responsibilities well."  *Id*. at 68.  Given the lack of evidence of any drug or alcohol abuse past or present, scarce drug and alcohol treatment resources should not be offered to Verzaleno.

       Respectfully submitted,
       Erek L. Barron
       United States Attorney

By: _____/s/_____
    Martin J. Clarke
    Timothy F. Hagan.
    Joseph L. Wenner
    Assistant United States Attorneys


    Office of the United States Attorney
    District of Maryland
    36 South Charles Street, Suite 400
    Baltimore, MD 21201-3119
    410-209-4840

## CERTIFICATE OF SERVICE

This is to certify that on this 6th day of February 2025, a copy of the foregoing *Government's Sentencing Memorandum* was electronically filed and made available to counsel of record.

_____/s/_____
Martin J. Clarke
Assistant United States Attorney